**PANHANDLE STEEL ERECTORS, INC., et al., Appellants,**

**v.**

**Pete WHITLOW et al., Appellees.**

**No. 7152.**

Court of Civil Appeals of Texas.

Amarillo.

May 28, 1962.

Rehearing Denied July 2, 1962.

Underwood, Wilson, Sutton, Heare & Berry, Simpson, Adkins, Fullingim & Hankins, James R. Collins, Amarillo, for appellants.

Burrell B. Evans, Tulia, for appellees.

CHAPMAN, Justice.

This is an appeal by Panhandle Steel Erectors, Inc., Charles M. Walker, Jerome H. Caldwell, and St. Paul Mercury Insurance Co., Inc. from the order of the trial court overruling their pleas of privilege.

All emphases shown herein are ours.

Plaintiffs below, appellees here, Dale D. (Pete) Whitlow, J. O. Parker, and Robert G. Lee, d/b/a Happy Elevator Company, are residents of Swisher County, Texas. They instituted this suit in the District Court of Swisher County against the parties above named to recover damages resulting from the failure of steel grain storage constructed by Panhandle Steel Erectors, Inc. and Walker and Caldwell. St. Paul Mercury Insurance Company, Inc., is joined as a party defendant by reason of having executed as surety for the principals, Walker and Caldwell, the contract bond in evidence in the sum of $4,200.00 conditioned they would fill all their undertakings, covenants, etc. Their undertaking was the construction of a concrete slab and foundation for grain storage tanks in Happy, Swisher County, Texas.

The principal office of Panhandle Steel Erectors, Inc., hereinafter called Steel Erectors, is in Amarillo, Potter County, Texas. C. M. Walker is a resident of Pot-

ter County, J. H. Caldwell is a resident of Randall County, and St. Paul Mercury Insurance Company, Inc.'s principal office is in Dallas County. Except when their names are used the parties will be referred to as they were in the court below.

Plaintiffs allege a separate contract was made by them with Steel Erectors to erect on the foundation three circular steel bins 39 feet in diameter, 65 feet high, intersticed together with 3 to 4 feet between such binds and braced properly to hold storage of grain when filled.

Plaintiffs seek to recover against all defendants except St. Paul Mercury Insurance Company, Inc. for damages for the failure of steel grain storage, alleging that Steel Erectors was negligent in furnishing defective materials for the construction of a steel grain storage elevator, in the manner of construction, and for breach of expressed and implied warranties. They allege Walker and Caldwell were negligent in failing to use anchor bolts of proper design, in failing to insert anchor bolts in the manner in which a reasonable and prudent builder would have inserted them under the same or similar circumstances, in failing to pour the foundation deeper and wider, in furnishing defective materials, and for breach of implied and/or expressed warranties. All defendants filed their pleas of privilege to be sued in the counties above shown respectively as their residences and principal places of business. Plaintiffs controverted the pleas, seeking to sustain venue in Swisher County under Subdivisions 5, 9a, 23, and 29a of Article 1995, Vernon's Ann.Civ.St. After a hearing the trial court overruled all pleas of privilege and all defendants have appealed separately.

Because of our view of the case we deem it necessary to write only upon Subdivision 9a of Article 1995, V.A.C.S., as applied to the rights of defendants, Walker and Caldwell, and Steel Erectors.

We shall discuss together defendants, Caldwell's and Walker's, and defendant Steel Erectors' contention that plaintiffs

failed to discharge the burden of proving exceptions to exclusive venue under Subdivision 9a, to the effect that an act or omission of negligence occurred in the county where the suit was filed, that such act or omission was that of defendant in person, or that of his servant, agent, or representative acting within the scope of his employment and that such negligence was a proximate cause of plaintiffs' injuries.

■ The contract for construction of the storage was made by plaintiffs with Mr. Mjolhus, referred to at times in the record as Mr. Milhouse and pronounced as such. Steel Erectors contend the evidence was incompetent to prove that Mjolhus was such an agent or representative of theirs as to impute to them any of his acts or omissions. To this contention we cannot agree. Pete Whitlow, one of the plaintiffs, testified as follows:

"A. *Mr. Milhouse of Panhandle Steel Erectors* contacted us to figure on this proposed storage.

"Q. All right.

\*   \*   \*   \*   \*   \*

"Q. Now what did he propose or did he propose anything in the way—

"A. He proposed. He looked at the site and he proposed on this strip between the two tracks to build some upright steel tanks. They would hold anywhere around 250 to 280,000 bushels. And he said he would draw up some plans and costs and so forth and so on, and present them to us. Was our—I believe that was our first meeting.

"Q. All right. Did he draw up some plans and present them to you?

"A. Yes, sir.

"Q. Would you recognize the plans if you were to see them again?

"A. Yes, sir.

"Q. I ask you, Mr. Whitlow, to look at this piece of paper and tell the Court what it represents, if that is a plan that Mr. Milhouse presented to you.

"A. This is the plan that he drew up, the proposal, and presented to us on near about August 24 or when he dated this, of this proposed plan.

"Q. What does that show, Mr. Whitlow?

"A. Well, it shows three 39-foot diameter tanks with two interstices spaced approximately 16 foot apart. They're circular tanks.

"Q. Does it show the interstice between the Tanks 1 and 3, and 3 and 5?

"A. Yes."

Then later in the testimony Mr. Whitlow had quoted Mr. Mjolhus as saying: "Now, that's the plan we can build." Counsel then asked him: "Now what do you mean by 'we'." He replied as follows:

"A. *His firm, Panhandle Steel Erectors.*

"Q. He was representing Panhandle Steel Erectors, is that right?

"A. *Yes. He was their representative, Mr. Milhouse.*"

All this testimony came into the record without objection. Then counsel asked Mr. Whitlow if Mr. Mjolhus was a member of the firm of Panhandle Steel Erectors. Opposing counsel then objected to that line of questions " * * * On the basis that it is an attempt here to use the ex parte declaration of agency, therefore, falling within the hearsay rule." Plaintiffs' counsel then called to the attention of the court that Steel Erectors had filed with the papers of the court their plea of privilege to be sued and made no objection as to whether they were not the correct party being sued. The objection was then overruled.

Additional to the testimony just stated plaintiffs notified Steel Erectors after the failure of the elevators and the company retained Mr. McMorries, a professional consulting engineer, to make the investigation. After that investigation he testified in the case for the plaintiffs.

Our court in 1915 held: "The relation of agency does not depend upon express appointment, but it must be, and frequently is, implied from the words and conduct of the parties and the circumstances of the particular case." Holmes v. Tyner, Tex.Civ.App., 179 S.W. 887. We reaffirmed that holding as late as 1957, citing a Commission of Appeals opinion to the same effect. Tudor et vir v. Thomas et al., Tex.Civ.App., 301 S.W.2d 733 (Refused, N.R.E.). Accordingly, we believe and so hold that the record made in this case is sufficient to show Mr. Mjolhus was acting as the representative of Steel Erectors in all his transactions with plaintiffs in the construction of the grain elevators and the warranties in connection therewith.

We now turn to the question proper as to negligence and proximate cause under Subdivision 9a.

The evidence shows in effect that Mr. Mjolhus wanted the foundation built by a reputable foundation man or firm and furnished a sketch of the layout of the elevators. He did not furnish the specifications for the foundation except as to the spacing of the anchor bolts. Mr. Whitlow testified Mr. Walker contacted plaintiffs, they furnished him the copy of the plan of the structure, he figured it and in a few days " * * * came back and told me he had checked the foundation, how many yards of concrete, how much steel * * * to hold that much grain storage and would build it for so much money."

"Q. All right. And then what happened after that?

"A. He built the foundation; set the bolts. He and his crew came in and built the foundation; furnished the contracting bond."

We believe the testimony of Mr. Mc-Morries, the consulting engineer, retained by Steel Erectors and used as a witness for plaintiffs, showed the negligence and proximate cause of both the foundation builders and steel erectors in their respective areas of construction essential to retain venue under Subdivision 9a. He testified in effect that the foundation was poured on the natural ground without excavation, that it should have been built wider and deeper [1] and that machine bolts were used instead of the proper hook-type or expanded head-type bolts. His conclusion was that the structural failure of the grain unit was due to improper foundation, to improper anchor bolts and to improper construction and design of the intersticed Tank 4 in that the omission of structural bracing from the east and west sides, either tying them together or tying them to the floor " * * * caused the structural failure of the units as together."

Mr. McMorries' testimony further shows:

"I found on Tank 2, which is this tank, that on the east side of the tank I found five, around five, anchor bolts that held the foundation to the tank or the tank to the foundation. I found the concrete broken away on five on this—on the east side of Tank 2. Also, on Tank 3, which is the middle full tank, *I found that the three anchor bolts on the east side, also, had been pushed outward allowing the tank to deflect out somewhat.* And at the base connecting these intersticed tanks to Tank 3 there is an angle, base angle, from one to the other around the circle, base angle, connecting that full tank to the intersticed tanks. *That base*

*angle was ripped and torn where it connects to Tanks 3 and 4, which is on the north side and east side of Tank 3.* The failure there was caused by the stresses transferred from Tank 4, which is an intersticed tank, to its connection with the first full tank, Tank 3. *Also, I found on Tank 4, which is the second one from the north, that there was a foundation failure on that one.* Three anchor bolts on the east side had broken at the floor line and that the remaining anchor bolts on the east side had pulled through the concrete. I found there when I noticed the ones that had pulled through the concrete that the anchor bolts were not of the standard type of anchor bolts used for construction work; that they were standard machine bolts; that they weren't hooked or expanded head-type that are used in concrete."

It thus appears that the failure in the foundation and the failure in both the design and bracing in the steel were the results of negligent omissions or commissions on the part of both the foundation builders and steel erectors in their respective construction obligations and that they singularly and collectively constituted a proximate cause and/or proximate causes of the damages suffered by plaintiffs as a result of the breaking away of the foundation and the separation of the steel and consequent flood of grain from the elevator to the surrounding area.

■ Though Mr. Caldwell does not show in the record to have done any of the figuring with plaintiffs on the foundation the contract bond signed by him with Mr. Walker shows him a principal in the contract for the construction in Happy, Texas and thus makes him liable along with the other principal for the failure in the foundation construction. Holmes v. Tyner, supra.

1. The testimony was that most of the property width was utilized but there is no showing that the foundation could not have been excavated and built with the necessary depth.

If we have properly interpreted the wording of defendants, Walker's and Caldwell's and Steel Erectors', points in which they assert plaintiffs have failed to discharge their burden of showing by a preponderance of the evidence etc. they are raising "no evidence" points. If so, the rule of Banks v. Collins, 152 Tex. 265, 257 S.W.2d 97 applies wherein it says:

"If, discarding all the adverse evidence and giving credit to all evidence that is favorable to the successful party, and indulging every reasonable conclusion that is favorable to him, a trier of the facts may have found in his favor, then it is to be concluded that there is evidence to support the finding."

On the other hand if, by the verbiage employed in the points, they are raising questions of the great weight and preponderance of the evidence a different rule applies and we must consider all the evidence. In re King's Estate (King v. King), 150 Tex. 662, 244 S.W.2d 660. In any event, under either rule, the evidence to sustain venue in Swisher County under Subdivision 9a is sufficient as to defendants, Steel Erectors and Walker and Caldwell, and the judgment is not against the great weight and preponderance of the evidence.

As heretofore stated, plaintiffs in their controverting affidavits raised four exceptions to exclusive venue. We are so certain that the record requires affirmance of the judgments as to defendants, Walker and Caldwell and Steel Erectors, under Subdivision 9a that we consider it useless to discuss the other subdivisions raised and pass now to a consideration of St. Paul Mercury Insurance Co., Inc.'s appeal.

Its liability could be only under its contract bond, which was entered into in Potter County. It has no place of payment, the record shows no agent in Swisher County, and it is separate from the oral contract of the principals to perform in the construction of a grain elevator foundation in Happy, Texas.

In the very early jurisprudence of this state our Supreme Court in Lindheim et al. v. Muschamp et al., 72 Tex. 33, 12 S.W. 125, said:

"The sureties on the bond were liable only upon condition that their principal failed to perform his contract, *and the bond is not made payable in any particular place*. The engagement entered into by Muschamp to construct the building was one contract, and the bond was another, each separate and distinct from the other. The liability upon the latter was dependent entirely upon the performance or nonperformance of the former.

"In order to give jurisdiction to the court in which this suit was brought the bond must have been made payable in Val Verde county. To entitle a plaintiff to sue in a county other than the residence of the defendant he must bring his case clearly within some exception named in the statute. Cohen v. Munson, 59 Tex. [236] 237. The fact that Muschamp's individual contract to construct the building was to be performed in Val Verde county did not give the court of that county jurisdiction of the suit brought upon the bond, payable at no specified place, and executed by persons residing in Kinney county at the time the suit was brought."

The courts of Texas, including our own, have consistently followed, cited and quoted from the Lindheim v. Muschamp case. Employers Casualty Co. v. William Cameron & Co., Inc., Tex.Civ.App., 288 S.W. 584 (N.W.H.); Scarbrough & Davis v. Culp, Tex.Civ.App., 276 S.W. 743 (N.W.H.); Hamlin et al. v. Aetna Casualty & Surety Co., Tex.Civ.App., 13 S.W.2d 382 (Writ Dis.)

St. Paul Mercury Insurance Co., Inc. is not a necessary party to this suit so

as to maintain venue against them under Subdivision 29a of Art. 1995, and since their obligation bond does not provide for payment in any county we believe their plea of privilege must be sustained.

Accordingly, the judgment of the trial court is affirmed wherein it maintained venue in Swisher County as to defendants, Walker and Caldwell and Steel Erectors, and is reversed as to St. Paul Mercury Insurance Company, Inc. and ordered transferred to Dallas County.